# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

***

UNITED STATES OF AMERICA,

    Plaintiff,

vs.

RUDY REDMOND,

    Defendant.

2:16-cr-00294-JCM-VCF

**ORDER**

MOTION TO SUPPRESS [ECF NO. 106]

Before the Court is Defendant Rudy Redmond's Motion to Suppress. (ECF No. 106). For the reasons discussed below, Defendant's motion is denied.

## BACKGROUND

Defendant faces charges arising from the robbery of EZ Pawn stores by a group of suspects. (ECF No. 73). Defendant was arrested and interrogated on October 7, 2016. (ECF No. 106 at 2). After being read his *Miranda* rights, Defendant gave several statements incriminating himself and others in the robberies. (ECF No. 91 at 14-62).

On March 5, 2018, Defendant filed a motion to suppress the statements he made to detectives on October 7, 2016. (ECF No. 106). Redmond argues that he did not voluntarily, knowingly, and intelligently waive his right to remain silent because (1) he "had taken Xanax and an unknown pain killer[1] about an hour before he was arrested and gave this statement," (2) he was "feeling dizzy, and light headed because of the officers repeated punching him and pushing his head into the ground during his arrest,"

---

[1] Though Defendant mentions "an unknown pain killer" in his motion to suppress, there was no further mention of an unknown painkiller during the evidentiary hearing.

1

and (3) "the detectives coerced Redmond into a confession by threats of maximum prison time." (ECF No. 106 at 2-3, 7). In response, the Government argues that Defendant was not intoxicated or deliberately injured when he waived his *Miranda* rights and detectives did not coerce Defendant into confessing. (ECF No. 112 at 5-8).

The Court held an evidentiary hearing on April 10, 2018. (ECF No. 124). Officer Ivins testified that in the process of being taken into custody, Defendant ran from police in a residential area and fell to the ground twice. The second time he fell, officers were able to hold him down and place him in handcuffs, though Defendant was still struggling. Officer Ivins did not see any officers hit, punch, or kick Defendant. Defendant had injuries on his face after his arrest, and officers summoned medical services to treat Defendant.[2] Detectives Beveridge and Condratovich testified about their interrogation of Defendant. They testified that Defendant gave no impression of being intoxicated during the interview, because he was articulate and lucid in answering the detective's questions.

Defendant testified that he took a Xanax at approximately 11:00 am on October 7, 2016 and he was arrested around noon that day. He was able to clearly remember his arrest. Defendant testified that he fell once while running from police, saw that he was surrounded, and then voluntarily surrendered to police by getting down on the ground, placing his hands behind his back, and crossing his ankles. Defendant stated that four or five officers punched and kicked him 15-20 times and pushed his face into the ground. Defendant was able to remember telling paramedics that that he was in pain and had been beaten by the officers, though there is no report to support this. Defendant was able to remember being at the scene of his arrest for hours before being taken to the interrogation, which took place starting at

---

[2] Officer Ivins also testified that at the time Defendant was arrested, Defendant made a comment about calling his attorney to make a police brutality complaint. Officer Ivins testified credibly that this was not treated as an invocation of Defendant's right to counsel because Defendant was talking about a potential subsequent civil suit rather than representation for the current criminal matter. "[R]equests for counsel are to be 'understood *as ordinary people* would understand them.'" *Sessoms v. Grounds*, 776 F.3d 615, 628 (9th Cir. 2015) (quoting *Connecticut v. Barrett,* 479 U.S. 523, 529 (1987)). The Court notes that Defendant was read the *Miranda* warnings hours after his arrest, and Defendant did not ask for counsel.

6:45 pm. Defendant was not able to remember anything that took place during the interrogation because of the Xanax he had taken earlier that day.

The parties submitted three items into evidence. The first exhibit was Defendant's booking photograph. (ECF No. 125 at 2). It shows scrapes on Defendant's chin and cheek and bruising on his forehead. (*Id.*). The second exhibit was an audio recording of Defendant's interrogation. (*Id.* at 1). It was not played during the hearing, but the Court listened to it prior to issuing this Order. The Court noted that the Detectives' tone throughout the interrogation was not threatening and Defendant's manner during the interrogation was practically identical to his manner while testifying at the April 10, 2018 hearing. The third exhibit was a written transcript of Defendant's interrogation. (ECF No. 126, previously submitted in ECF No. 91). Defendant drew attention to several comments made during the interrogation. Defendant stated, "When I'm barred out, like the night I got arrested. I—I black out. And I don't remember nothing." (ECF No. 91 at 28). Detectives talked to Defendant about the punishment he could face if convicted and the potential benefits of telling the truth to help the investigation. (*Id.* at 20, 23-25, 32, 49-50, 68-70). Detective Beveridge stated at one point that if Defendant lied, Detective Beveridge is "ready to throw you to the wolves." (*Id.* at 23). Defendant did not mention to the Detectives that any violence took place during his arrest.

## DISCUSSION

A waiver of *Miranda* rights must be "made voluntarily, knowingly and intelligently." *Miranda v. Arizona*, 384 U.S. 436, 444 (1966). "A waiver is voluntary if, under the totality of the circumstances, the confession was the product of a free and deliberate choice rather than coercion or improper inducement." *United States v. Doe*, 155 F.3d 1070, 1074 (9th Cir. 1998). "There is a presumption against waiver, and the burden of showing a valid waiver is on the prosecutor." *United States v. Bernard S.*, 795 F.2d 749, 752 (9th Cir. 1986). "Whenever the State bears the burden of proof in a motion to suppress a statement

that the defendant claims was obtained in violation of our *Miranda* doctrine, the State need prove waiver only by a preponderance of the evidence." *Colorado v. Connelly*, 479 U.S. 157, 168 (1986).

**I.     Defendant's Alleged Intoxication**

An individual's intoxication is relevant to determining whether statements made to police are admissible. *Gladden v. Unsworth*, 396 F.2d 373, 380 (9th Cir. 1968) (stating that if an individual "was in a drunken stupor approaching mania," "the error in admitting the testimony concerning those statements was so gross and so prejudicial as to amount to denial of due process"); *United States v. Guaydacan*, 470 F.2d 1173, 1174 (9th Cir. 1972). The intoxication must be such that the individual was "incapable of waiving his *Miranda* rights." *United States v. Alexander*, 106 F.3d 874, 877 (9th Cir. 1997).

The Court finds that Defendant was not intoxicated during the interrogation to a degree that would affect his ability to waive his *Miranda* rights. Detectives Beveridge and Condratovich testified credibly that Defendant was lucid throughout the interrogation and was able to answer questions in a linear manner. This matches the Court's impression of the interrogation's audio recording. Defendant acted consistently during the interrogation with how he acted during the April 10, 2018 hearing. In addition, the Court finds that Defendant did not communicate to Detectives that he had taken a Xanax that day. Defendant mentioned being addicted to Xanax (ECF No. 91 at 24, 28, 64, 70-71), but not taking one earlier that day. While Defendant referenced blacking out from intoxication "like the night I got arrested" (ECF No. 91 at 28), this comment could not have applied to his October 7, 2016 arrest. Defendant was arrested around noon. The Court finds that Defendant was referencing an earlier arrest. (*Id.* at 14).

The Court does not find Defendant's testimony on this issue credible. Defendant stated he took a Xanax before the robbery and was able to remember the events of the day until the interrogation. Defendant was able to recall very specific details regarding his arrest, including the exact position he took to voluntarily surrender to police, the number of officers, and times that the officers allegedly punched and kicked him. Defendant was able to remember speaking to the paramedics and remaining at the crime

4

scene for several hours. Defendant's claimed memory loss only appears to have affected his interrogation, which took place approximately eight hours after he took a Xanax. The Court does not find this set of circumstances to be credible.

**II.    Alleged Violence During Arrest**

"[A] confession 'must not be extracted by any sort of threats or violence.'" *United States v. Eccles*, 850 F.2d 1357, 1361 (9th Cir. 1988) (quoting *Jones v. Cardwell,* 686 F.2d 754, 757 (9th Cir.1982)). "A confession is involuntary [when] coerced by physical intimidation." *Id.* (quoting *Townsend v. Sain,* 372 U.S. 293, 307 (1963)).

The Court finds that Defendant was not subjected to threats, violence, or improper physical intimidation during his arrest. Officer Ivins testified credibly that the only force used against Defendant was the force necessary to take him into custody. Defendant's booking photograph shows injuries consistent with Defendant falling over and scraping his face on the ground. Even if the injuries were caused when police held Defendant on the ground to handcuff him while Defendant struggled, this would not be the type of force that would render Defendant's statements involuntary. The fact that officers summoned medical services to the scene further indicates that officers meant Defendant no harm.

The Court does not find Defendant's testimony on this issue credible. The Court cannot believe that a group of officers would beat a suspect in the middle of the day in the middle of a residential area without any witnesses other than Defendant. Though Defendant stated he told paramedics about the officers' actions, there has apparently been no report filed. Defendant did not mention any beating during his interrogation, and he gave no indication that he was afraid of the Detectives.

**III.    Alleged Coercion During Interrogation**

"Law enforcement conduct which renders a confession involuntary does not consist only of express threats so direct as to bludgeon a defendant into failure of the will. Subtle psychological coercion suffices as well, and at times more effectively, to overbear a rational intellect and a free will." *United*

*States v. Tingle*, 658 F.2d 1332, 1335 (9th Cir. 1981) (internal quotation omitted). "[T]he admissibility of a confession turns as much on whether the techniques for extracting the statements, as applied to *this* suspect, are compatible with a system that presumes innocence and assures that a conviction will not be secured by inquisitorial means as on whether the defendant's will was in fact overborne." *Miller v. Fenton*, 474 U.S. 104, 116 (1985).

Defendant's argument that his statements were coerced rests entirely on his interpretation of *Tingle*. In *Tingle*, the Court held that an officer's statements to the Defendant were "patently coercive" as a whole when he warned "that a lengthy prison term could be imposed, that Tingle had a lot at stake, that her cooperation would be communicated to the prosecutor, that her failure to cooperate would be similarly communicated, and that she might not see her two-year-old child for a while." 658 F.2d at 1336. However, the Court was most critical of the officer's statements regarding communicating Tingle's failure to cooperate to the prosecutor and Tingle's child. *Id.* at 1335-1336, 1336 n.5. Taking the interrogating officer's statements as a whole, the Court found "that the purpose and objective of the interrogation was to cause Tingle to fear that, if she failed to cooperate, she would not see her young child for a long time." *Id.* at 1336. The Court stated that comments regarding maximum sentences and communicating cooperation to the prosecutor could be proper under some circumstances. *Id.* at 1336 n.3, n.4.

The Court finds that, taken as a whole, the interrogation was not unduly coercive. The Detectives' accurate statements about the punishment Defendant could face[3] and the potential benefits of telling the truth to help the investigation[4] were proper. (ECF No. 91 at 20, 23-25, 32, 49-50, 68-70). The Detectives did not make any comment about Defendant not being able to see his family while he was in prison.

---

[3] Detective Beveridge said at one point that Defendant could be going to prison for the rest of his life. (ECF No. No. 91 at 49). However, the statement was made in relation to the negative impact a co-defendant, Goldsby, had on Defendant's life. Detective Beveridge testified that he made the statement to encourage Defendant to give more information on Goldsby by showing that Defendant had no reason to protect Goldsby.

[4] Defendant argued at the hearing that the Detectives could not control Defendants' sentence, and that their offer of help was hollow. Detective Beveridge testified credibly about the positive influence he could have in a case on behalf of the Defendant.

Detective Beveridge stated at one point that if Defendant lied to him, "I'm ready to throw you to the wolves. And if at the end of the day you end up getting 30 or 40 years…I'm not gonna lose one ounce of sleep." (*Id.* at 23). However, the Court notes that Detective Beveridge had already told Defendant that he could get "40 plus years" prior to this comment. (*Id.* at 20). Rather than threaten Defendant with additional time for refusing to cooperate, Detective Beveridge was reiterating the serious consequences Defendant was facing. Taking the Detectives' statements as a whole, the Detectives did not override Defendant's will during the interrogation.

## IV. Totality of the Circumstances

Though the Court rejects each of Defendant's arguments separately, the Court must also consider whether Defendant's *Miranda* waiver was voluntary "under the totality of the circumstances." *United States v. Doe*, 155 F.3d 1070, 1074 (9th Cir. 1998). Taking the combined effects of Defendant's allegations into account, the Court finds that Defendant waived his rights voluntarily, knowingly and intelligently. In addition to the circumstances discussed above, the Court is persuaded by Defendant's statements near the end of the interrogation. Defendant admitted that he had lied throughout the interrogation "[t]rying to cover up for myself" because "I don't know what all you got." (ECF No. 91 at 70). Defendant's attempt to game the system and force the Detectives to show their evidence before he would admit to anything is incompatible with Defendant being intoxicated, threatened, and coerced. Therefore, there are no grounds to suppress Defendant's October 7, 2016 statements.

ACCORDINGLY, and for good cause shown,

IT IS HEREBY ORDERED that Defendant's Motion to Suppress (ECF No. 106) is DENIED.

DATED this 13th day of April, 2018.

_____
CAM FERENBACH
UNITED STATES MAGISTRATE JUDGE